UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

LESLIE SMITH,

          Plaintiff,

-v-                                                    No. 09 Civ. 6130 (LTS)(GAY)

PILGRIM POWER ELECTRICAL
CONTRACTING LLC et al.,

          Defendants.

-------------------------------------------------------x



LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE:

### MEMORANDUM OPINION AND ORDER

      Plaintiff Leslie Smith ("Smith" or "Plaintiff") brings this action against Pilgrim Power Electrical Contracting LLC ("Pilgrim Power"), Harold Lierow ("Lierow"), and Oscar Valenzvela ("Valenzvela," collectively "Defendants") pursuant to 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), and New York City Human Rights Law, N.Y. City Admin. Code, § 8-107 ("NYCHRL").[1] Defendants now move for summary judgment.

      The Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C.

---

[1]    In Plaintiff's Statement of Disputed Facts Under Local Rule 56.1, he concedes that his claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., are not viable because Pilgrim Power employs fewer than the requisite number of employees, and he withdraws those federal claims. (Pl.'s Statement of Disputed Facts Under Local Rule 56.1 ("Pl.'s 56.1") ¶ 16.) Plaintiff's allegations of race discrimination, retaliation, and hostile work environment under Section 1981 are thus the only remaining federal claims.

§ 1331, and supplemental jurisdiction of his state law claims pursuant to 28 U.S.C. § 1367.

For the following reasons, Defendants' motion is denied in part and granted in part.

## BACKGROUND

As a preliminary matter, the Court notes that Defendants have failed to comply with S.D.N.Y. Local Civil Rule 56.1. The moving party's obligation under Local Rule 56.1(a) is as follows:

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

Defendants' Local Rule 56.1 Statement is about one page long, contains eight paragraphs, and scant information. "The purpose of the rule is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." Gallo v. Alitalia-Linee Aeree Italiane-Societa Per Azioni, 585 F. Supp. 2d 520, 529 (S.D.N.Y. 2008) (citing Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000); Watt v. N.Y. Botanical Garden, No. 98 Civ. 1095, 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000)). Defendants' Local Rule 56.1 Statement is an arbitrary recital of a few cherry-picked facts, referencing solely a short affidavit submitted by Lierow. It is no more helpful to the Court than had Defendants failed to proffer one entirely. While Plaintiff's Counter-Statement pursuant to Local Rule 56.1(b) is lengthy, it also fails to follow the specifications of the local rule, as it is replete with inappropriately included legal

arguments. The Court therefore has undertaken the task of carefully reviewing the record to determine whether material facts are in dispute. See Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (holding that "while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement") (internal quotation omitted).

The following facts, unless otherwise noted, are undisputed. Pilgrim Power is a New York-based electrical company. Lierow is the President of Pilgrim Power and manages all aspects of the company including hiring and firing employees. (Aff. of Harold Lierow ("Lierow Aff.") ¶ 3.) Valenzvela is the foreman at Pilgrim Power. (Aff. of Oscar Valenzvela ("Valenzvela Aff.") ¶ 3.) According to Pilgrim Power's payroll records, Lierow hired Smith as an electrician on February 27, 2006. (Decl. of Ugochukwu Uzoh ("Uzoh Decl.") Ex. 6 at 3; Pl.'s 56.1 ¶ 1.)[2] Valenzvela supervised Smith during the period of his employment at Pilgrim Power. (Pl.'s 56.1 ¶ 3.)

Smith is black and of Panamanian descent, and was born in 1947. (Id. ¶ 39.) During the period of his employment, Smith was the only black employee at Pilgrim Power while the majority of other employees were "white/Hispanic" and mostly of Dominican descent. (Id. ¶¶ 39-40.) Smith alleges that he was often harassed at work and called derogatory names. He testified that Valenzvela referred to him as "nigger," "nigger black electrician," "black electrician," or "black guy electrician," rather than by his given name. (Uzoh Decl. Ex. 3, Dep.

---

[2] References to a party's Local Civil Rule 56.1 Statement incorporate the underlying evidentiary citations.

of Leslie Smith ("Smith Dep.") 26:10-21; 48:9-49:9, 50:13-19.) He also testified that Valenzvela mocked him for being "an old man." (Id. 29:9-13; 55:8-17.)

Smith worked for Pilgrim Power until approximately May 1, 2008. (Pl's 56.1 ¶ 17.) While the parties agree that Smith ceased working for Pilgrim Power at about that time, the reasons for the cessation of the employment relationship are disputed. (Lierow Aff. ¶ 12.) Plaintiff alleges that he was told in May 2008 that he was being laid off due to lack of work at Pilgrim Power. (Pl.'s 56.1 ¶ 17.) He asserts that he was the most senior electrician at Pilgrim Power except for Valenzvela, and that he was the only employee laid off at that time. (Id. ¶¶ 20, 28.) Defendants allege that, several weeks before the end of his employment, Smith asked to be laid off so that he could return to Panama. (Lierow Dep. 30-31; Lierow Aff. ¶ 12.) Pilgrim Power generally applied a "last man in, first man out" policy with regard to layoffs during slow work periods. (Uzoh Decl. Ex. 4, Dep. of Harold Lierow ("Lierow Dep.") 18: 10-21.) While there was no written agreement with employees to this effect, Lierow testified at his deposition that it was the "usual" practice at Pilgrim Power and that all his employees were aware of it. (Id.)

Plaintiff asserts that he was instructed to contact Defendants after a short period of time in order to return to Pilgrim Power if work had picked up. (Pl.'s 56.1 ¶ 18.) According to Plaintiff, Defendants refused to answer his phone calls. (Id. ¶ 19.) Defendants contend that Plaintiff resigned and voluntarily left Pilgrim Power and that, when he later called about returning to work, they informed him that there was no work available. (Pl.'s 56.1 ¶ 19; Lierow Dep. 62:9-63:10.) Soon after Plaintiff was laid off, he discovered advertisements from Pilgrim Power in a local newspaper seeking to hire electricians. (Uzoh Decl. Exs. 21-22.) Lierow hired two electricians a few months after Plaintiff ceased working for Pilgrim Power. (See id. Ex. 20.)

Alain E. Patrizio, who was 28 years old at the time, was hired on August 18, 2008. (Id.) Ruben R. Patrizio, who was 63 years old, was hired on September 8, 2008. (Id.) Plaintiff asserts that Alain E. Patrizio was hired to replace him because he was younger and white/Hispanic. (Pl.'s 56.1 ¶ 58.) According to Lierow, Alain and Ruben Patrizio were laid off in November. (Lierow Reply Aff. ¶ 5.) Lierow asserts that at some point later in the year, Pilgrim Power did hire two new electricians because they were "moderately skilled and demanded a much lower salary than the Plaintiff." (Id.)

Lierow also asserts that Smith was "always mad at something or somebody" and that personal hygiene was an issue. (Id. Ex. 12.) According to Lierow, Smith would urinate in empty soda bottles at construction sites instead of visiting the restroom. (Id.) Smith acknowledges using bottles to relieve himself, but alleges that the practice is a common one on construction sites. (Smith Dep. 35:14-36:10.)

Smith also alleges that he suffers from a medical condition, which was diagnosed as prostate cancer; he also describes his condition as prostatitis, which is inflammation of the prostate gland. (Am. Compl. ¶¶ 18-19; Pl.'s 56.1 ¶¶ 45, 47; Uzoh Decl. Ex. 25.) He further alleges that he suffers from severe back pain. (Pl.'s 56.1 ¶¶ 45, 47; Uzoh Decl. Ex. 25. ) Smith argues that he was discriminated against based upon his disability because he needed to take off time during the week to visit his physician.

On August 14, 2008, Smith filed a complaint with the New York State Division of Human Rights ("DHR") charging Pilgrim Power with an unlawful discriminatory practice related to employment based upon age, national origin, race, and disability. (Uzoh Decl. Ex. 18.) On November 28, 2008, the DHR human rights specialist assigned to the case issued a "Final

Investigation Report" concluding that there was enough evidence to support an inference of discrimination warranting a hearing before an Administrative Law Judge. (Id. Ex. 13.) On April 8, 2009, the Administrative Law Judge dismissed the complaint on grounds of administrative convenience pursuant to N.Y. Exec. Law § 297(9). (Id. Ex. 19.) Accordingly, pursuant to § 297(9) of the N.Y. State Human Rights Law, Smith was authorized to pursue his case in any court of appropriate jurisdiction.

On March 20, 2009, Smith sent a letter to Pilgrim Power informing Lierow that, because he had not been called back to work since approximately May 1, 2008, he was resigning from his position as an electrician. (Uzoh Decl. Ex. 15.)

## DISCUSSION

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (the moving party bears the burden of establishing that there is no genuine issue of material fact). A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)). Similarly, "mere conclusory allegations, speculation or conjecture" will not suffice to defeat summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996); see also Fed. R. Civ. P. 56(e).

Plaintiff's claims, brought pursuant to Section 1981, the NYSHRL, and the NYCHRL, are evaluated under the three-step burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000); Borrero v. Am. Express Bank, Ltd., 533 F. Supp. 2d 429, 442 (S.D.N.Y. 2008). The first step under McDonnell Douglas requires that Plaintiff proffer evidence establishing a prima facie case. 411 U.S. at 802; see, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). Plaintiff's burden at the prima facie stage is minimal. Cooper v. State of Conn. Pub. Defenders Office, 208 F. App'x 24 (2d Cir. 2008).

The second step shifts the burden to the employer to offer some legitimate, non-discriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802. "This burden is one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (internal citation and quotation marks omitted). The employer does not need to prove that the challenged action was not the product of discrimination, but must provide a clear and specific explanation for the action. Gibbs v. Consol. Edison Co. of N.Y., 714 F. Supp. 85, 89 (S.D.N.Y. 1989). The presumption of discrimination arising from the prima facie case drops out upon such a proffer of a legitimate, non-discriminatory reason.

The burden then shifts back to the Plaintiff to offer proof that would enable a

reasonable fact finder to conclude that Defendants' proffered reason was a pretext for prohibited discrimination. Reeves, 530 U.S. at 143; accord Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000). Plaintiff may rely at the rebuttal stage on the same facts used to establish the prima facie case so long as a preponderance of the evidence would allow a reasonable fact finder to find that a discriminatory violation has occurred. Holtz, 258 F.3d at 78. However, a plaintiff's own conclusory allegations will not be sufficient to overcome proffered evidence substantiating a defendant's non-discriminatory rationale for the actions. See Jasmin v. Dep't of Labor, No. 04 Civ. 10237 (LTS), 2007 WL 1746909, at *8 (S.D.N.Y. June 15, 2007).

Smith asserts claims for discrimination based upon his race, age, and disability, as well as retaliation and hostile work environment claims. The Court will address each claim in turn, beginning with Smith's discrimination claims.

Plaintiff's Discrimination Claims

Race

In accordance with McDonnell Douglas, the Court looks first to whether Plaintiff has established a prima facie case evidencing discrimination. To establish a prima facie case of discrimination under Section 1981, Plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position held; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the action gave rise to an inference of discrimination. Hicks, 509 U.S. at 506. The first two points are not disputed; Plaintiff is a member of a protected class and he was qualified for the position.

Plaintiff has also tendered evidence sufficient to support a finding that he suffered an adverse employment action. The record reflects that he was laid off from employment around

May 2008. While Defendants assert that Smith resigned and requested to be laid off from his employment, Smith disputes that assertion and the documentary record provides support for Smith's claim. On September 10, 2008, Lierow sent a letter to the DHR, which stated that Plaintiff was "Temporarily Laid Off Due to Lack of Work." (Uzoh Decl. Ex. 20.) He further wrote: "I cut Leslie Smith during a slow down because he works alone and my current work requires teams, for example, an electrician and a helper." (Id.) Defendants point to Smith's resignation letter, dated March 20, 2009 (Uzoh Decl. Ex. 15), to show that there was no adverse employment action. However, the letter was sent approximately ten months after Defendants had laid off Smith. (Uzoh Decl. Ex. 20.) Moreover, in the letter, Smith asserted that he was resigning because Pilgrim Power had not recalled him, had replaced him, and had created a hostile work environment. (Uzoh Decl. Ex. 15.) The record is clearly sufficient to make out the adverse employment action prong of Smith's prima facie case.

Plaintiff also has adequately demonstrated that the circumstances surrounding the adverse employment action gave rise to an inference of discrimination. While Defendants assert that he was laid off due to a lack of work, the evidence shows that he was the only employee laid off at that time. (See Uzoh Decl. Ex. 20.) Because Smith was one of the most senior electricians at the company, the layoff was in direct contravention of Pilgrim Power's policy of laying off the most junior employees during slow periods of work. Furthermore, Plaintiff alleges that he was instructed to call Pilgrim Power to be placed on future projects and that Defendants refused to answer his phone calls. Plaintiff also alleges that his supervisor, Valenzvela, made statements indicative of hostility to blacks and of his desire to hire Dominicans.

Because Plaintiff has proffered a prima facie case of discrimination, the burden

shifts to Defendants to proffer a legitimate non-discriminatory reason for the termination. Defendants assert that "economic conditions" prevented them from asking Plaintiff to return to work. The Court therefore moves on to the last step in the McDonnell Douglas framework, which requires Plaintiff, at this summary judgment stage, to demonstrate that there is a genuine issue of material fact as to whether Defendants' stated reason is a pretext for prohibited discrimination. See Anderson, 477 U.S. at 256; Reeves, 530 U.S. at 143. Smith satisfies his burden here.

Defendants provide inconsistent reasons for Smith's termination. While Defendants argue that he was laid off because of a lack of work, the record reveals that Smith was the only employee laid off at that time. (Uzoh Decl. Ex. 20.) According to Lierow's letter to the DHR, Smith was laid off on April 27, 2008. (Id.) Lierow lists in the same letter nine other individuals who were still employed at Pilgrim Power during that time period. (Id.) He notes two other employees as "resigned to pursue other employment." (Id.) Only Smith is listed as laid off due to lack of work. Also, Lierow lists each employee's race and Lierow is the only black employee. The other employees are listed as Hispanic, white, or Asian. Further, a review of the dates of hire for each employee shows that Smith was the most senior employee except for Valenzvela. (Id.) The circumstances of Smith's layoff and the company's failure to recall him are thus facially inconsistent with Lierow's stated policy of letting the most junior employees go first. (Lierow Dep. 18:10-18.)

Defendants proffer other reasons for the termination that are also inconsistent with the stated purpose for the adverse action. Both Lierow and Valenzvela testified that Smith actually resigned from employment to return to his family in Panama. (Lierow Dep. 30:16-20;

Uzoh Decl. Ex. 5, Dep. of Oscar Valenzvela ("Valenzvela Dep.") 35:2-5.) However, Lierow failed to mention this in his response to DHR, but instead stated that Smith was not a "team" player. At his deposition, Lierow did not testify that Smith was laid off because he did not work well with others. Indeed, Lierow testified that Smith was a "fine" mechanic and that he had no issues with Smith at all. (Lierow Dep. 47:9-24.) Later in the deposition, when questioned more in depth, Lierow concedes that toward the end of Smith's employment he "did get a little combative," but that he laid him off when Smith decided to return to Panama. (Lierow Dep. 49:14-18; 50:17-18.) Furthermore, after laying off Smith, Lierow hired two new electricians in August and September 2008. (Uzoh Decl. Ex. 20.) This cuts against Defendants' argument that a slowdown in work was the reason for Smith's termination. Defendants also submit that Smith's hygiene was an issue because he would urinate in empty soda bottles at the work site instead of using the restroom. (Id. Ex. 12.) Because a rational jury could conclude that the various proffered reasons for Smith's termination were pretexts for prohibited race discrimination, Defendants' motion will be denied as to Plaintiff's race discrimination claims.

The Court next turns to Plaintiff's age and disability discrimination claims, which are brought pursuant to NYSHRL and NYCHRL.

Age

With regard to the age discrimination claim, the only disputed element is whether Smith has proffered a factual basis for an inference of discrimination sufficient to establish a prima facie case. Defendants concede that they hired two new electricians after Smith was laid off because they were "moderately skilled" and "demanded a much lower salary than Plaintiff." (Lierow Reply Aff. ¶ 5.) Smith contends that Alan E. Patrizio, a 28 year-old electrician hired on

August 18, 2008, was hired because he was younger than Smith and could be paid less than the more experienced, 63-year old Smith. There is enough evidence in the record to support an inference of discrimination to establish a prima facie case for age discrimination.

For the reasons articulated above concerning Plaintiff's race discrimination claim, Defendants' proffer of lack of work as a nondiscriminatory reason is insufficient to warrant summary judgment in light of Defendants' hiring of new electricians after Plaintiff was laid off, and the inconsistent reasons Defendants offer for laying off Plaintiff. Defendants' motion will be denied as to Plaintiff's age discrimination claims.

Disability

Smith asserts two claims based on disability discrimination: (1) that he was wrongfully terminated because of his disability, and (2) that he was denied a reasonable accommodation by Pilgrim Power. To make out a prima facie case for disability discrimination in connection with the termination, Smith must show that he is an individual with a disability within the meaning of the statute; that the employer had notice of the disability; that he was otherwise qualified for the position, with or without reasonable accommodation; and that he was fired because of his disability. Fall v. N.Y. State United Teachers, 289 F. App'x 419, 420 (2d Cir. 2008); Schlenger v. Fid. Emp'r Servs. Co., LLC, No. 09-CV-3986, 2011 WL 1236156, at *30 (S.D.N.Y. Mar. 31, 2011). Under the NYSHRL, any "medically diagnosable impairment" is a disability.[3] Barr v. New York City Trans. Auth., No. 99 Civ. 7927 (FB), 2002 WL 257823, at

---

[3] While disability discrimination claims under the ADA and NYSHRL are analyzed similarly, the definition of disability is broader under New York law. See McEniry v. Landi, 84 N.Y.2d 554, 558-59 (1994); State Div. of Human Rights v. Xerox Corp., 65 N.Y.2d 213, 218-19 (1985); accord Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 104 n. 2 (2d Cir. 2003). The NYCHRL's definition of "disability" is as

*8 (E.D.N.Y. Feb.20, 2002).

In the Amended Complaint, Smith alleges that he was diagnosed with prostate cancer and requested approximately two hours off from work per month for medical treatments. (Am. Compl. ¶¶ 18-19.) He alleges that he was denied those requests. (Id. ¶ 21.) In Smith's opposition to the summary judgment motion, and in the documents produced in discovery, he no longer defines his disability as prostate cancer, but says that he suffers from prostatitis, which is inflammation of the prostate gland, and severe back pain. (Pl.'s 56.1 ¶¶ 45, 47; Uzoh Decl. Ex. 25.)

Smith has proffered a letter from his physician, which states that Smith was under treatment for prostatitis. (Uzoh Decl. Ex. 25.) Smith alleges that he requested, and was criticized for using, time off for medical treatment before the May 2008 layoff. Smith testified that Valenzvela was angry that Smith had to visit the physician and would tell him that he was "losing time" and did not want to give him work as a result. (Smith Dep. 32:5-11; 33:12-24; 64:12-16.) Therefore, he has made out a prima facie case for disability discrimination based upon his termination. For substantially the reasons discussed above in connection with the race and age claims, there are material issues of fact as to whether Defendants' proffered reasons for the termination are pretextual. The Court denies summary judgment with regard to Smith's claim that he was terminated because of his disability.

However, the Court grants summary judgment as to Smith's reasonable accommodation claim. The crux of Smith's reasonable accommodation argument is that he

---

broad as that of the NYSHRL. Mora v. Danka Office Imaging Co., No. 98 Civ. 4485 (SHS), 1999 WL 777888, at *6 (S.D.N.Y. Sept. 29, 1999). The same analysis applied to Smith's NYSHRL claim applies to his claim under the NYCHRL.

needed to visit the physician and was denied requests for leave.  The record does not support this contention.  Smith testified as follows:

> Q:   2007 you were diagnosed with prostrate [sic] cancer?
>
> A:   I tried to – same boss and Oscar [Valenzvela] let them know about it.  I told him that I need time to go and check up.  Let me say about an hour and I go and I come back to my work.  He said you have to come Saturday to make up the time.  I say okay, I will come Saturday and Oscar was telling Harry, I don't want this guy working here.  He is losing time, and I come into work, I was working.  He is telling Harry, I don't want this black guy coming here.  He is losing time.
>
> . . .
>
> Q:   Let's talk about your disability for a second.  In your complaint you alleged that . . . Pilgrim didn't accommodate you because of your illness.  I just want to ask you how do you feel that they didn't accommodate?
>
> A:   I didn't want them to accommodate me.  I wanted to work.  I was able to work.  I was ready to work because I go–I tell you I go on Saturday when I am taking my trip during the week.  I come on Saturday and work by myself.

(Smith Dep. 31:22-32:11; 63:18-64:9.)  The record does not reflect that Smith was ever denied a requested accommodation, or that he even needed an accommodation other than making up some time on Saturdays, which he was willing to do.  See Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 120 (2d Cir. 2004) ("'In general . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.'" (quoting 29 C.F.R. pt. 1630 app. § 1630.9)); Robertson v. Trustees of Columbia Univ. in City of New York, No. 08 Civ. 1913 (LAP), 2009 WL 3425647, at *8 (S.D.N.Y. Oct. 20, 2009) (same); Inikoff v. N.Y. State Div. of Human Rights, 83 A.D.3d 1159, 1163 (N.Y. App. Div. 2011) (holding that "[a]n

employer cannot be expected to propose reasonable accommodation absent critical information on the employee's medical condition and the limitations it imposes."). The documentary evidence does not support Smith's assertion that he requested a specific accommodation that was denied, only that the motivation for terminating him was that he was disabled.[4] The Court therefore grants Defendants' summary judgment with respect to Plaintiff's reasonable accommodation claim only.

Plaintiff's Retaliation Claim

Smith alleges that Defendants retaliated against him based on complaints he made to Lierow and Valenzvela, and also for filing a complaint with the DHR.

To set forth a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity, (2) the defendants were aware of that activity, (3) he suffered an adverse employment action, and (4) a causal connection existed between the protected activity and the adverse employment action. Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); accord Kessler v. Westchester Cnty. Dept. of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006); Manoharan v. Columbia Univ. College of Physicians and Surgeons, 842 F.2d 590,

---

[4] In his Local Rule 56.1 Statement, Plaintiff asserts that he requested scheduled time off for hospital visits and Defendants denied his requests. (Pl.'s 56.1 ¶¶ 48-49.) Despite the representation in Plaintiff's Local Rule 56.1 Statement, the documentary evidence in the record does not support his claim. Smith testified that he was asked to come in on Saturdays to make up the work, which he did. In Smith's affidavit, he stated that he was the one who requested to work on Saturdays, but he did not say that he was denied that accommodation. Rather, he stated: "[t]hroughout this period, Defendants ceaselessly complained about my use of unpaid medical leave, and they clearly indicated that I was not wanted." (Smith Aff. ¶ 18.) The evidence in the record does not support a reasonable accommodation claim.

593 (2d Cir. 1998).[5] "The anti-retaliation law 'protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" Fincher, 604 F.3d at 721 (quoting Burlington, 548 U.S. at 67).

Smith testified that Valenzvela referred to him as "the black guy electrician" and that, after the second time Valenzvela did so, Smith complained to Lierow about his conduct. (Smith Dep. 26: 10-21.) According to Smith, Lierow did not respond to his complaints and "turned his back" to Smith when he complained about Valenzvela's alleged conduct. (Smith Dep. 28:7-12; 54:4-9.) Smith testified that, on numerous occasions, Lierow ignored his complaints about improper conduct on the job. (Smith Dep. 49: 8-9; 54:4-9; 62:12-16.) According to Smith, it was soon after he made these complaints that he was terminated. The law in this Circuit does not require that a complaint be made formally in writing for it to qualify as a protected activity. Cruz, 202 F.3d at 566. Because questions of material fact exist surrounding the circumstances of Smith's termination the Court denies summary judgment as to the complaints Smith made to Lierow.

Next, Plaintiff alleges retaliation based upon the complaint he filed with the DHR on August 14, 2008. Plaintiff claims he was first laid off in March 2008 and then more

---

[5] Section 1981 encompasses claims of retaliation. CBOCS West, Inc., v. Humphries, 553 U.S. 442, 457 (2008). The same analytical framework applies to retaliation claims brought pursuant to the NYSHRL, NYCHRL, and Section 1981. See, e.g., Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) ("Retaliation claims made under 42 U.S.C. § 1981, like those made under Title VII, are evaluated using a three-step burden-shifting analysis."); Blanc v. Sagem Morpo, Inc., No. 09-3762-cv, 2010 WL 3836155, at *2 (2d Cir. Oct. 1, 2010) ("The same framework applies to discrimination and retaliation claims brought pursuant to the New York State Human Rights Law and the New York City Human Rights Law, and pursuant to 42 U.S.C. § 1981."); Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000) ("Our consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims.").

permanently laid off in May 2008. Smith filed his complaint with DHR approximately four months after May 2008. Smith also testified that before filing the complaint, he never informed Lierow or Valenzvela that he intended to file a formal charge against them. (Smith Dep. 53: 17-23.) Therefore, Smith may not rely upon the complaint to the DHR to support a claim for retaliation because his filing of the DHR complaint could not have been a factor influencing the earlier adverse employment action.

Hostile Work Environment Claim

Plaintiff asserts that he was subjected to a hostile work environment.[6] In order to establish a hostile work environment claim, a plaintiff must produce evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (internal quotation omitted); see also Fincher, 604 F.3d at 723-24. The plaintiff must subjectively experience the working environment as abusive and the Court must be satisfied objectively that it is abusive. See Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004); Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir. 2003).

Generally, isolated instances of harassment are insufficient to form the basis for a finding of a hostile work environment. Rather, the employee must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents was sufficiently

---

[6] Section 1981, NYSHRL, and NYCHRL hostile work environment claims are evaluated under the same substantive analysis as such claims brought under Title VII. See Fincher v. Depository Trust and Clearing Corp., No. 06 Civ. 9959, 2008 WL 4308126 (WHP), at *5 (S.D.N.Y. Sept. 18, 2008), aff'd, 604 F.3d 712 (2d Cir. 2010).

continuous and concerted, to have altered the conditions of his working environment. Cruz, 202 F.3d at 570. In determining whether the proffered evidence is sufficient to establish the requisite alteration of the employee's working environment, the Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. Additionally, courts consider the totality of the circumstances in evaluating the work environment. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 767 (2d Cir. 1998). Indeed, the Supreme Court has described the standard for asserting hostile work environment claims as a demanding one, explaining that courts are to avoid construing federal law as a "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998); see also De La Rosa v. City of N.Y. Police Dept., No. 09 Civ. 5290, 2010 WL 4177626 (SAS), at *7 (S.D.N.Y. Oct. 22, 2010) ("The standard for a hostile work environment claim is 'demanding.'") In Faragher, the Supreme Court made clear that "conduct must be extreme to amount to a change in the terms and conditions of employment." 524 U.S. at 788.

    Having considered the totality of the circumstances, taking as true the evidentiary facts proffered by Smith and drawing all reasonable inferences in his favor, the Court concludes that Plaintiff has tendered evidence sufficient to support a rational fact finder's conclusion that he suffered a hostile work environment at Pilgrim Power. While a "mere utterance of an . . . epithet" generally does not suffice to set forth a hostile work environment claim, see Harris, 510 U.S. at 21, Smith testifies that he was frequently referred to in derogatory racial terms. "[W]hether racial slurs constitute a hostile work environment typically depends upon 'the

quantity, frequency, and severity' of those slurs . . . considered 'cumulatively in order to obtain a realistic view of the work environment.'" Schwapp v. Town of Avon, 118 F.3d 106, 110-11 (2d Cir. 1997) (quoting Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 444 (7th Cir. 1994); Vore v. Indiana March 8, 2011Bell Tel. Co., 32 F.3d 1161, 1164 (7th Cir. 1994)). At his deposition, Smith testified that on numerous occasions Valenzvela called him "nigger," "nigger black electrician," "black electrician," or "black guy electrician." (Smith Dep. 26:10-21; 48:9-49:9, 50:13-19.) He also testifies that Valenzvela ridiculed him about his age while he worked. (Smith Dep. 29:9-13; 55:8-17.) Drawing all reasonable inferences in Plaintiff's favor, a rational jury could conclude that Smith suffered a hostile work environment at Pilgrim Power. Defendants' motion for summary judgment is denied as to Plaintiff's hostile work environment claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted to the extent that Plaintiff's reasonable accommodation claim is dismissed, and is denied in all other respects. Plaintiff's Title VII, Americans with Disabilities Act and Age Discrimination in Employment Act claims are withdrawn, with prejudice. This Memorandum Opinion and Order resolves docket entry no. 25.

This case remains referred to Magistrate Judge Yanthis for general pretrial management. The parties are directed to meet promptly with Judge Yanthis to discuss settlement. A final pretrial conference will be held before the undersigned on **Friday, November 4, 2011, at 11:00 a.m.** The parties must confer and make their submissions in advance of the final pretrial conference as specified in the August 2, 2010, Pre-Trial Scheduling

Order (docket entry no. 12).

SO ORDERED.

Dated: New York, New York
September 6, 2011

LAURA TAYLOR SWAIN
United States District Judge